UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DARRYL HASLETT,         ) | |
|     Plaintiff,         ) | |
|              ) | |
| v.         ) | Case No. 24-1199 |
|              ) | |
| JOSH SPRINGER *et al.*,         ) | |
|     Defendants.         ) | |

ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Darryl Haslett, an inmate at Menard Correctional Center.

I.   **Complaint**

**A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing a complaint, the court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

The events Plaintiff describes are alleged against the following Western Illinois Correctional Center ("WICC") officials: Mental Health Physician Little, Corrections Lieutenant Genebacher, Corrections Sergeant Brent Hendricks, and Correction Officers Floyd, Josh Springer, and Zanger.

On October 4, 2023, Plaintiff was held in the Restrictive Housing Unit ("RTU") at WICC when he attempted suicide by hanging. Plaintiff heard Defendant Springer call on his radio, open the chuck hole to Plaintiff's cell, and then spray Plaintiff's face and eyes with oleoresin capsicum (*i.e.*, mace). After Defendant Hendricks and Springer entered the cell, Plaintiff observed that Hendricks resprayed Plaintiff with mace for no reason. Plaintiff was escorted to a bullpen cage, where Hendricks held Plaintiff with mace on his person. (Pl. Compl., Doc. 1 at 4-5.)

After ten minutes, Dr. Meyers, the Mental Health Supervisor, instructed Defendant Hendricks to escort Plaintiff to the Healthcare Unit to remove the mace. Dr. Meyers then informed Plaintiff that he would be placed on suicide watch. After the mace was removed, Plaintiff was escorted to a restrictive housing unit where he smelled and observed urine, feces, and vomit in the cell. Plaintiff told Defendants Floyd and Hendricks the cell needed to be cleaned, but they ignored him. Plaintiff acknowledges that Floyd provided a new mattress at Plaintiff's request. (*Id.* at 5-6.)

Concerned about his health, Plaintiff cleaned what he could from the cell by using a provided blanket. Thereafter, Defendant Genebacher refused Plaintiff's request for a

new blanket. Plaintiff states that from October 4 to 11, 2023, he did not have a blanket. From October 6 to 10, 2023, the temperature in Plaintiff's cell dropped to thirty degrees, noting that a broken window was exposing Plaintiff to the cold. On October 4, 2023, Plaintiff observed Defendant Zanger made a hanging gesture to Plaintiff. (*Id*. at 5-7.)

On October 5, 2023, Plaintiff spoke with Defendant Little, whom Plaintiff characterized as "unprofessional" because she conversed with Plaintiff about private matters inside a utility closet. At one point, an unidentified staff member walked into the closet, where Little asked the staff member for his opinion about suicide. Plaintiff later developed a rash and told Defendant Hendricks to sign him up for sick call, but a nurse never examined Plaintiff. Plaintiff was released from the RTU on October 11, 2023. On October 17, 2023, Plaintiff wrote an emergency grievance that he gave to Defendant Zanger. Plaintiff claims that Zanger shared the content of his grievance with another inmate and threatened to withhold Plaintiff's mail. (*Id*. at 7-8.)

**C. Analysis**

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). "As with a claim for deliberate indifference to serious medical needs, a conditions-of-confinement claim includes an objective and a subjective component." *Id*. "The plaintiff must first establish 'an objective showing that the conditions are sufficiently serious—i.e., that they deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health and

safety.'" *Id*. at 1051 (quoting *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). "The plaintiff must next establish 'a subjective showing of a defendant's culpable state of mind.'" *Id*. "[T]he state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Giles*, 914 F.3d at 1051.

Plaintiff's account is sufficient to state an Eighth Amendment conditions of confinement claim against Defendants Floyd and Hendricks for refusing to address Plaintiff's request regarding the condition of his RTU cell and Defendant Genebacher for not providing Plaintiff with a replacement blanket. *See Haywood v. Hathaway*, 842 F.3d 1026, 1030 (7th Cir. 2016) (holding that evidence of below-freezing temperatures for four days, a broken window, and lack of adequate clothing or blankets was sufficient to survive summary judgment).

"[P]rison guards may use chemical sprays when reasonably necessary to subdue recalcitrant prisoners, for orders must be obeyed, and there are only so many choices available to correctional officers when inmates refuse." *Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005). However, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). "[T]he appropriateness of the use must be determined by the facts and circumstances of the case." *Id*.

Plaintiff states a claim against Defendants Springer and Hendricks regarding the use of mace upon entering Plaintiff's RTU cell on October 4, 2023. However, Plaintiff

states no claim against Hendricks for waiting ten minutes before allowing Plaintiff the ability to wash off the mace. *See Kervin*, 144 F. App'x at 552 ("While detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering, holding the inmate until the disturbance has clearly ended does not, nor does waiting 10 to 20 minutes before letting him wash off the spray.") (internal citations omitted).

Plaintiff also does not state a claim against Defendant Hendricks for merely telling Plaintiff to sign up for sick call to receive treatment for his rash. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("officials do not act with 'deliberate indifference' if they are helpless to correct the protested conditions"); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (concluding that it is an incorrect proposition of law to state that "anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself").

Plaintiff does not state a claim against Defendant Zanger for his alleged gestures directed at Plaintiff or for the alleged mishandling of Plaintiff's grievance. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). However, Plaintiff states a First Amendment retaliation claim against Zanger for threatening to withhold Plaintiff's mail. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (concluding that "[t]he word 'retaliation' has the potential . . . to divert

attention from the rule that both threats designed to deter future speech and penalties for past speech are forbidden").

Plaintiff's further claim that on one day in October 2023, Defendant Little had a mental health consultation with Plaintiff in a closet where one person interrupted is insufficient to state a claim where Plaintiff does not allege that Little intended to inflict harm or that the consultation compromised his mental health treatment such that he experienced further injury or the unnecessary and wanton infliction of pain. *See Roe v. Elyea*, 631 F.3d 843, 864 n.19 (7th Cir. 2011) ("[U]nder tort principles applicable in § 1983 actions, a plaintiff must show that 'he has suffered an "actual" present injury and that there is a causal connection between that injury and the deprivation of a constitutionally protected right caused by a defendant.'") (quoting *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999)).

**IT IS THEREFORE ORDERED:**

1) **According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff states a First Amendment claim against Defendant Zanger and Eighth Amendment claims against Defendants Genebacher, Floyd, Hendricks, and Springer as noted in the Court Merit Review Order. Plaintiff's claim against Defendants in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **The Clerk of the Court is DIRECTED to terminate Little as a Defendant.**

3) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

4) **The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.**

5) **Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

6) **Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.**

7) **This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.**

8) **Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.**

9) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

10) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

11) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

12) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED October 15, 2025.

s/ *Colleen R. Lawless*

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE